The next matter, number 22-1865, United States Securities and Exchange Commission v. Raymond Gastauer. At this time, would counsel for the appellant please introduce himself on the record to begin? Thank you, Your Honor. Alex Loomis for Relief Defendant Appellant Raymond Gastauer. With the Court's permission, I'd like to reserve three minutes for rebuttal. You may. Your Honor, the District Court below entered a $3.3 million judgment against an 80-year-old German citizen who has no minimum contacts in and has not purposefully availed himself of the United States as a forum. This is a violation of due process under international shoe, and the judgment should therefore be reversed. This is an unprecedented expansion of personal jurisdiction doctrine, and it is one that the Congress has not expressly authorized either. The District Court reached its decision because it believed it did not need to have an independent basis of personal jurisdiction over my client. Instead, it ruled that it could impute the jurisdictional contacts of other defendants to him by virtue of the fact that those other defendants had defrauded U.S. investors and transferred some of the proceeds of that fraud to him. The SEC did not allege and did not claim and does not allege or argue on appeal that my client knew of the transfers, that he invited the transfers, or that he was involved in the fraud in any way at all. Instead, their argument is that simply by virtue of being an innocent recipient of a bank transfer, he is subject to personal jurisdiction in U.S. courts. Counsel, can I ask you why didn't your client reassert the personal jurisdiction defense in his opposition to the SEC's motion for summary judgment? Because the law is clear that courts do prefer that defense to be reasserted in post-pleadings phases of the case. Well, so at that point, I think, Your Honor, we were trying to get a clear record for appeal at this stage because there had only been an electronic order denying it. We had already asserted it in a motion to dismiss, and we had already asserted it in an answer. I think we were trying to provide clarity as to what the nature of the appeal would be and to try to provide a clear record for what the district court's rationale was below. I'm sorry, can you explain that more? Why wouldn't you, if you want a clear record on the personal jurisdiction issue because you just got a text record, why wouldn't you reassert it then in opposition to the motion for summary judgment? Well, it's not proper, I mean, to be clear, Your Honor, I think that it was explained below by counsel below that we had entered the case after the motion to dismiss order had been denied. It wasn't asserted again as a defense to summary judgment because at that point everything was law of the case. And we asserted it again simply at the motion for sanction space because we thought that at that stage it was clear there was nothing left for the court to do but to enter judgment. And we thought at that stage that we needed to have a clear record going forward on appeal. But the Eighth Circuit has held that a party is not required to assert personal jurisdiction in opposition to entry of summary judgment, especially after you've already litigated the issue and lost, because it's actually not a defense to summary judgment if the court's already ruled that it has jurisdiction over you. It's not a merits defense, and therefore it doesn't go to subject matter jurisdiction. So you just thought there was no point in raising it again is what you're saying? Precisely right, Your Honor. And if you look at the opposition to summary judgment, there was a fulsome merits record that I think the original plan was to fully brief that and try to assess a full merits defense. When the additional deposition was ordered, our client decided that they did not want to participate further to preserve jurisdictional challenges in terminating. The court imposed a sanction saying that he would not be able to dispute the merits. We don't dispute that that was an appropriate sanction for appeal. We agree that it's appropriate to say that our client could not dispute the merits as an appropriate sanction for this case. But that doesn't mean, though, that we have forfeited the personal jurisdiction challenge that we assert on this appeal. I understand what you're arguing, which is that you made it, you moved to dismiss, you made it in the answer that seemed enough. But nevertheless, the case law does say that even though you can make the defense and then if you lose, go ahead and litigate on the merits until the end, it also says that you can't engage in intentional sandbagging in the Schatzky case, and I think that's what your opposing counsel is arguing here, that you lost, you then sort of litigated summary judgment on the merits because you thought you might win, and then all of a sudden you changed positions. So why isn't what happened here intentional sandbagging of the government? So, Your Honor, I think that what the SEC has done here is they've taken a few sentences, and if you go back and look at the beginning of the sentences they're quoting, they make it very clear that they're referring to circumstances where a party never raised the motion to dismiss for lack of personal jurisdiction in the first place. It's sandbagging if you assert a personal jurisdiction defense in your answer and then you never file a motion, and then only after you've lost the case that you decide to assert personal jurisdiction for the first time at that point. That's sandbagging because that doesn't give the plaintiff the fair notice, the ability to sort of bring their action in a new jurisdiction. Everything's already been extended at this point. So you're saying as long as you move to dismiss on the ground of personal jurisdiction, it cannot be sandbagging full stop. Yes. That's your position? That's right. Do you have any case that says that? Yes. Schatzky says that. InfoSpan in the Ninth Circuit says that. Ali v. Hamsta also says that in the Eighth Circuit. Those are the three cases that have expressly considered this issue, and the key line from Schatzky is that a party is not required to continue beating a dead horse after they've filed a motion to dismiss for lack of personal jurisdiction. They've lost, and they assert it in an answer. I am familiar with the Schatzky case, Counselor. It just seemed that the party there did a lot more than your client did to assert the personal jurisdiction defense. It was raised at more stages of the litigation, so I don't think Schatzky's fully on point. Ali v. Hamsta and InfoSpan are also very helpful at this point then, Your Honor. I believe in Ali v. Hamsta there was a specific argument that the defendant didn't raise lack of personal jurisdiction in the opposition to summary judgment, and Ali v. Hamsta said that did not matter. And InfoSpan is probably the most recent case that goes into this. Actually, I think it's actually two years before. I guess it's two years before Schatzky, but it does survey all the other cases that the SEC cites in their brief. And it points out that in every single one where courts have found sandbagging or bad conduct, it's a circumstance where the defendant never raised lack of personal jurisdiction in the first place. And I respectfully submit that this would be truly the first time in which any court has ever done so. And I'd also point this court to the full decision, which we cited in the 28-J letter, and I'm aware that there is the language that the SEC has pointed to about litigation misconduct being able to give rise to sanctions, but it's important to focus on the context in which those words were written. It was discussing specifically the Insurance Corporation of Ireland case out of the Supreme Court where the Supreme Court held that a court could impose as a Rule 37B sanction an order prohibiting a defendant from denying jurisdictional facts that would otherwise establish that they had personal jurisdiction over them. It's simply unprecedented for a court to say that somebody loses the right to assert personal jurisdiction as a defense as a legal matter rather than just saying they lose the right to deny the jurisdictional facts in the first place. And I'd also add on this point, Your Honor, that of course I respect the fact that this court can affirm on any grounds and I recognize that, but this is not a sanction that the SEC sought below. The SEC did not argue below that they should lose the right to appeal personal jurisdiction. They did not ask for that remedy below, and that's not a remedy that the court imposed either at the summary judgment order or in the sanctions order. And I would say that if we're going to view this as a matter of sanctions,  we should leave it up to the district court in the first instance rather than impose that anew. With that said, turning to the merits of the argument. So if I understand, you would have, under your analysis, had it been reasonably clear that the subject of the deposition was to be whether your client had engaged in conduct that would subject him to personal jurisdiction, then you'd have a problem. Then the court could say, if you're not going to give a deposition on that subject matter, then I'm going to assume we have jurisdiction. Absolutely, Your Honor. If that's the Insurance Corporation v. Ireland case, we would be out of luck if that had been the facts of our case. And so what does the record show, if anything, regarding the subject matter of the proposed deposition? The subject matter of the proposed deposition was going to be whether or not our client actually received $2.8 million of the $3.8 million. The record shows in this case. Yes. And that was the sole inquiry of the deposition. That was what the deposition was set for because we had disputed that at summary judgment based on a document that we had failed to produce. That was a mistake, and we don't dispute that for purposes of the appeal. And the point of the deposition was to determine whether we owned the $2.8 million. We did not come up and, you know, we think that there is still a reasonable dispute as to whether our client received that, but we are not disputing that on appeal, and we think that is a fair sanction. But turning to the merits of the personal jurisdiction issue, if I may, Your Honor, we would submit that the district court's ruling that it could impute the jurisdictional contacts of other defendants to our client is a violation of the principle that a third party's unilateral conduct cannot give rise to personal jurisdiction over the defendant. Instead, there has to be purposeful availment by the defendant himself, and this court has repeatedly emphasized that purposeful availment comes down to two elements, voluntariness and foreseeability, and both of those things are absent here. If you look at page A78 of the appendix, which is where all of the allegations against the relief defendants are, you won't find any hint of that. If you look at pages A104 and A05 of the appendix, which is the declaration that my client submitted, you'll see uncontested factual assertions that he has no purposeful availment, he doesn't do any business in the United States, he's barely ever visited before. Now, the district court based its ruling on other cases that had found that you don't need to have an independent basis of subject matter jurisdiction to assert, to enforce a federal judgment under the Exchange Act against a relief defendant. We respectfully submit that subject matter jurisdiction and personal jurisdiction are two different doctrines. Subject matter jurisdiction is about the power of the court over the subject matter. So what is the government to do here to get the money back? So, Your Honor, they're going to realistically have to enforce any judgment they already have in a German or U.K. court where some of the money Would a judgment like this be enforceable in a German court? I don't think a judgment would be enforceable if they lacked minimum contacts and purposeful availment, Your Honor. And I'm not trying to be clever with that answer. I'm just pointing out that it would be much easier to enforce a judgment if they are not trying to domesticate a U.S. judgment that violates basic precepts of international law notions of personal jurisdiction. But otherwise, your position is they've got to go to Germany. Yes, but my position, to be clear, Your Honor, is that they're going to have to go to Germany anyway. And they haven't been able to enforce it because my client doesn't have any interest in the United States. And to our knowledge, they haven't tried to domesticate this in Germany or the U.K. anyway. And I recognize that that's a frustrating concern, Your Honor. I truly do. And I'm not trying to create a bar to enforcement. But personal jurisdiction is a liberty interest. What if the government had asserted that your client either directed or invited the receipt of the funds and had proof to that effect? We'd be subject to personal jurisdiction then. So there's still an opportunity for discovery on that point if we remand. Is there not? So conceivably, I think that they have never asked for the right to amend their complaint to make those allegations. But I guess to be clear, one thing I would say. I mean, it seems to me that based on the appeal that you filed, we need to determine whether the district court decided on the wrong basis. And if we decide that it did, it seems that vacater would be the appropriate remedy as opposed to a reversal. Yes. And then we would just send it back to have this discovery if the government chooses to proceed with it. Yes, Your Honor. And just to be clear, if I may, to add one caveat to my answer, because I may have been a little quick in answering. I think under this Court's decision, copia communications, it's not enough to simply invite the transfer of funds or goods from a particular forum. I don't think that's enough to subject to personal jurisdiction. Yeah. When you said he neither didn't direct, didn't invite, no allegations, he's even aware of it. You're not saying that had there been any one of those three, then there's personal jurisdiction. Right. I get it. And, Your Honor, if I may elaborate on this point slightly, I realize that I'm out of time just for briefly. Briefly. Yes. My point, I think there needs to be some connection to the underlying fraud, not just a simple invitation of transfer of funds. And that's what copia communications held, that a company in Jamaica that contracted with a Massachusetts company to send them goods from Massachusetts, even though there was purposeful contract with a resident in the forum, and ultimately they received goods from them. But we don't need to decide any of this if we vacate. True. Thank you, Your Honor. Thank you, Counsel. At this time, if Counsel for the Appellee would please introduce himself on the record to begin. May it please the Court. Arjit Ramkumar for the Securities and Exchange Commission. This Court should affirm the District Court's decision to enter judgment in favor of the Commission as a sanction for the repeated and severe discovery violations committed by Appellant Raymond Gastauer, a relief defendant who received more than $3 million in ill-gotten gains. Here's what the puzzle will be. You sue me and I say no jurisdiction over me. And it turns out I'm right, but we don't know that at the time. I say it. I move to dismiss for no jurisdiction. The Court says, oh, maybe there's jurisdiction. You then notice my deposition. I say there's no jurisdiction. I'm not coming. You send the derogatories. I say there's no jurisdiction. I'm not coming. And I stand by my position that there's no jurisdiction. So the Court then sanctions me for the discovery. How could that then lose my jurisdictional defense, particularly what you're saying here, that because they didn't do that and they went forward some with the case, that means they lose their jurisdiction defense. It seems heads you win, tails I lose. So our position, Your Honor, is the facts of this case are materially different than the hypothetical you just described because here Gassauer intentionally sandbagged the commission in delaying assertion of his personal jurisdiction defense. If he moved to dismiss, how did he delay asserting it? So he didn't move to dismiss, Your Honor, and he did assert the defense in his answer, but then in the three years afterwards he extensively litigated on the merits and then he sandbagged the commission. And there are two pieces of evidence supporting that. Counsel, can you just, I just want to take a moment here because I don't think any of the cases you've cited to us indicate that what he did here was not enough. So you cite a case where a plaintiff didn't reassert the defense in an answer. You cite a case where a defendant refused to participate in jurisdictional discovery. That's not what happened here. So do you have any case that says that when a defendant moves to dismiss, reasserts it in an answer, and then having lost, has to go ahead and litigate the case on the merits, that that's intentional sandbagging? So what I would say, Your Honor, is that the cases cited by both parties uniformly conclude that intentional sandbagging can be a basis for forfeiture. And while there's not a case specifically on all fours with the type of sandbagging that occurred here, our position is that the undisputed salient facts show that he sandbagged the commission and there are two pieces of evidence to support that proposition. The first is on page 183 of the appendix. He chastised the commission for not following up on his discovery responses by deposing him. Then when the commission tried to do precisely what Gastauer said the commission should have done, depose him to follow up on discovery deficiencies, he changed his position and then said the commission could not depose him at all due to a purported lack of personal jurisdiction. And then, in our view, Gastauer persisted in his gamesmanship during the parties' negotiations surrounding the deposition, and this is at District Court Docket 2733. He asked the commission to postpone the deposition and didn't raise his defense at the outset of those negotiations. He then asked the commission to narrow the scope of the deposition, and the parties went back and forth on that issue multiple times on July 12th of last year. One day later, he then informed the commission he would not sit for the deposition at all. Can't you have a personal jurisdiction defense? You put it in your answer, so you've put the other side on notice, but then you tell the other side you're real serious about it and you actually file a motion to dismiss, a Rule 12 motion to dismiss. You then lose that. At that point, don't you have the option of, as an alternative, seeing if you can fend off the merits since you're being forced to do so? You certainly do have the option, Your Honor, but our position is— But that's not a waiver, is it? So our position is there's a difference between simultaneously litigating on the merits and asserting a personal jurisdiction defense versus sandbagging the other side. But the word sandbagging, really, I find totally unhelpful here because really what you're talking about is whether this is analogous to other situations in which people have not moved to dismiss. Have you got any case where someone has actually moved to dismiss on jurisdictional grounds and then they've never expressly waived the defense and then at some point refused to participate, and yet that is sandbagging? So I think going back to the Schatzky case that was discussed earlier is instructive. So in that case, the defendants moved to dismiss on the basis of lack of personal jurisdiction and raised the defense in their answer. But then they took several additional affirmative steps. They asked the district court for a written explanation for its ruling. They raised the defense in a supplemental summary judgment filing, and they pursued reconsideration or an interlocutory appeal under 28 U.S.C. 1292b. Now, importantly, even with all of those affirmative steps, the D.C. Circuit said it would have been better and fairer for the defendants to have raised their personal jurisdiction objection in their summary judgment motion. Our position is that the unfairness is even more acute here because Gastower did not pursue any of those aforementioned affirmative steps. But Schatzky doesn't find intentional sandbagging. So it's not a case where somebody's been forced to waive or forfeit, whatever word you want to use, their personal jurisdiction defense, after they've moved to dismiss and raised it in an answer. So I think the answer to the question is you don't have a case that's on all of Orr's, correct? So, Your Honor, I would point this court to the cases we cite on pages 22 to 23 of our brief, the Yeldell v. Tutte case out of the 8th Circuit, the Rice v. Nova Biomedical Corp. case out of the 7th Circuit, and then the Peterson v. Highland Music case out of the 9th Circuit. Now, I know in that case the 9th Circuit did not conclude that sandbagging occurred. But again, all these cases know that sandbagging can be a basis for forfeiture. And our position is that the undisputed facts show not only that Gastower extensively litigated on the merits years after asserting his defense, but did so in an abusive manner. You keep using sandbagging. Doesn't that term mean that I don't tell you I've got something, like two aces, and I let you go on thinking otherwise and thinking otherwise, and then at the last minute surprise you? If that's what it means, I don't see how that gets you when I start off the conversation by saying, look at my two aces, and I really want to play them. So I agree with your hypothetical, Judge Chiara, and I think that is what happened here. And I would, again, go back to the parties' negotiations surrounding the deposition. So there's no reason why he could not have raised his personal jurisdiction objection at the outset of those negotiations. But it's law of the case. He's already taken the only shot that the rules give him is to file a motion to dismiss. That's it. That's his only option, and he's fully done that, and the court has given him an answer. Courts generally don't like it if people come back and keep arguing stuff they've already decided. Again, but here he could have informed the commission at the outset of the negotiations that he believed that the court lacked personal jurisdiction over him and so the deposition should not proceed, but he did not do that. Counsel, the cases are very clear that once you've moved to dismiss, reasserted the defense and an answer, and the court has rejected it, that you then can then go ahead and litigate on the merits because you have the choice. You can just do nothing, or you can litigate in the merits, and that's what the defendant did here. He litigated on the merits, and I understand that what you're saying is that the discussions and negotiation around the deposition were frustrating to the government and maybe could have been handled better, but why would that rise to the level of a forfeiture or waiver after the defendant has moved to dismiss on personal jurisdiction and the court ruled against it? So it's the party's negotiations, Your Honor, coupled with the fact that he specifically chastised the commission for not following up on his discovery responses by deposing him. Why would that be enough for a forfeiture or waiver? Do you have any case that suggests that that is enough to give up your right for a court to have personal jurisdiction over you? So our position is in conjunction with the passage of time and the fact that he extensively litigated on the merits without even mentioning or acknowledging the defense is enough. And one final point on this, condoning gas hours litigation tactics in this case would allow litigants to repeatedly flout court orders. Well, let me – I'm having trouble seeing that. You sue me saying I drove a car and hit you and injured you, and so you sue me for your medical bills. I have two defenses. One is I was never in your state, and the other is I wasn't driving the car. So I've got a personal jurisdiction defense and I've got a merits defense. I file my motion to dismiss on personal jurisdiction grounds, and the court wrongly denies it. Can't at that point I say, all right, I'm in this, I've raised it in my answer, I've moved it, but you say after litigating, I want to take your deposition now because I'm going to show I wasn't even in the car. Can't I do that without waiving my personal jurisdiction defense? Again, Your Honor, you can. Our position is – Then how is that different than what happened here? And suppose I go halfway down the road. I want to take your deposition to show you weren't in the car. We talk about the date. We finally get to the range, and then I say to heck with it. I'm not doing it. I'm just staying on my personal jurisdiction defense. Can't I do that? So our position, Your Honor, is that the abrupt change in position surrounding the negotiations of the deposition constitutes sandbagging. And again, I would point to the fact that there was only one day separating the negotiations that the parties had and then Gastauer's abrupt decision to inform the commission he would not sit for the deposition at all. With the Court's permission, I would like to turn to the second issue presented in this appeal, which is whether the district court correctly concluded that it could impute the jurisdictional contacts of Michael, the violating defendant, to Gastauer. Our position is that the successor in interest context is instructive, primarily based on this Court's decision in Rodriguez-Miranda v. Benin, and our position relies on a two-step framework. So, first, numerous courts have held that imputation of jurisdictional contacts in the successor context follows from a finding of liability, and that comes directly from the city of Richmond case we cite on page 28 of our brief. And the rationale underlying that principle is if it is fair to hold a successor in interest liable for its predecessor's actions, then it is also fair to subject that same successor to the personal jurisdiction of any court where its predecessor is. But we don't have what the law calls a successor in interest here. I'm sorry, Your Honor? We don't have a successor in interest in this case. Correct, Your Honor. Our position is that the context is instructive because relief defendants are similarly situated to successors in interest. But the successor in interest is simply a legal fiction for saying it's the same party. Understood, Your Honor. And in Ed Peters Jewelry Co. Inc. v. C&J Jewelry Co. Inc. 124F3252, this court specifically noted that there are a number of different bases for successor liability and specifically held that the receipt of a fraudulent transfer of property is a distinct species of successor liability independent from other bases for successor liability, such as the voluntary assumption of liabilities or a successor being a mere continuation of its predecessor. So our position But those cases are about business entities. How is a father a successor in interest to a son? So two responses to that point, Your Honor. First, our position is not that relief defendants are successors in interest, but rather that they are similarly situated. But second, in Rodriguez Miranda v. Benin But isn't the whole premise of the relief defendant that they've done nothing wrong and they just happen to have received money that you want to disgorge? So I'm trying to understand how the comparison works. Sure. And I would point, Your Honor, to the Rodriguez Miranda v. Benin decision. So there, there were multiple successors in interest, the defendant's mother and a successor corporation. Now, regarding the defendant's mother, the mother received a fraudulent transfer of intellectual property and that was the basis for this court concluding that the mother was properly a successor in interest under Federal Rule of Civil Procedure 25C. Now, in that case, there were additional facts showing that the mother assisted. When you discuss the cases, is it fair to say there's no Supreme Court case that would say you could have personal jurisdiction in these circumstances? You certainly haven't cited one. I would say there's no Supreme Court case opining one way or another on the issue of whether the jurisdictional context of a violating defendant can be imputed to a relief defendant. But this court has imputed jurisdictional context in a host of different contexts. But never in, never where, I mean, restitutionary actions have been brought for ages, so much so there's a restatement by the ALI. I couldn't find in all your brief any case anywhere reaching out and establishing jurisdiction over someone who the only basis of asserting jurisdiction is that they, without notice or participation, received some money from someone in the jurisdiction, other than maybe that one district court case. So just on the subject of imputation writ large, Your Honor, I would point this court not just to the Rodriguez-Miranda v. Benita decision, but also this court's decision in Donatelli. So one of the things this court held in Donatelli is that jurisdictional context of a partner can be imputed to a partnership, even in the absence of evidence of actual control. Sure, but these aren't partners. There's no argument they're partners. I keep coming back to, we've got, this is a straightforward situation. I have no context with a jurisdiction at all. The only basis someone is asserting is that I opened my mail one day and found a check from someone in the jurisdiction. And you're saying that jurisdiction now has personal jurisdiction over me. I find no case saying that to be the example, except arguably that one was a Hanson district court case. So, again, Your Honor, I would point to the Benin decision from this court, where this court noted that once you have personal jurisdiction over predecessors, you also have personal jurisdiction over successors and interests for the reasons I are telling you. But you just said you're not arguing he's a successor and interest. Yes, Your Honor, but we demonstrate in our brief that relief defendants are similarly situated to successors and interests that receive fraudulent transfers of property because they share four core attributes. Thank you. Thank you, counsel, at this time. Counsel, for the appellant, please reintroduce yourself on the record. To begin, you have a three-minute rebuttal. Thank you, Your Honor. Alex Loomis for relief defendant appellant Raymond Gastauer. There's one point that I want to stress and just dwell on for a moment, this Benin case that the SEC has continuously advocated. We addressed this quite thoroughly on pages 14 to 15 of the brief, and I would respectfully submit that Benin is perfectly consistent with the theory of personal jurisdiction that we have put forward and that I put forward to you in response to Judge Howard's question and inconsistent with that applicable to the case here. So specifically, the successors and interest found, specifically engaged in acts to effectuate a fraudulent transfer, they alterized, notarized documents, and they submitted fraudulent assignment papers to the Copyright Office, the District Court, and the Bankruptcy Court. That is perfectly consistent with the rule that I have put forward that you can have, you can assert jurisdiction over a relief defendant if he's involved in the fraudulent transfer of funds or involved in the fraud itself, but he can't be subject to jurisdiction based on the unilateral conduct of other parties. What about you stress that he had no idea that money was coming to him or what it was? Well, he now knows what it was. He now knows he has in his hands money that belongs to other people, and he won't give it back. How is that not improper behavior affecting the jurisdiction? So I think the concern, Your Honor, is that it's not as though this is a judgment or an attachment in rem over a specific res of funds. The SEC doesn't allege that he still has this money, and even if that were an allegation in this case, that wouldn't necessarily be true in future cases. Right. The problem is they can go after his other assets with this order, correct? That's precisely right. The order is against him. It's not against the funds. That's precisely right, Your Honor. And to use a somewhat silly analogy, but if I were to send my mother a $20 bill that I had stolen from somebody and then my mother were told by the SEC that I'd gotten that $20 bill from securities fraud, but my mother had already spent the $20 bill, I don't think it would be fair to go after her for $20. And so I think that's the ultimate issue here. The restatement would allow that, wouldn't it? I'm sorry? Wouldn't the restatement allow that? Well, the restatement would allow that as a remedy, but Supreme Court personal jurisdiction precedents wouldn't allow that for a basis for assertion of jurisdiction. I'm happy to answer any other questions the Court has, but I'm otherwise happy to. I guess one other point briefly is just on this whole issue about the waiver and forfeiture point. Courts have only ever found surrender of personal jurisdiction rights. If there's a waiver, an intentional relinquishment of personal jurisdiction, that hasn't happened here. Forfeiture, that's the sandbag in cases. That's where you act in a manner that's inconsistent with the assertion of the defense by never raising it in a motion to begin with, or three, as a punishment by saying that you're not allowed to deny specific jurisdictional facts. I would submit those are the only three circumstances in which courts have found a waiver or forfeiture or sanction for personal jurisdiction rights, and none of them are present here. Unless there are further questions, I'm happy to rest my briefs. Thank you. Thank you, Your Honor. Thank you, counsel. That concludes argument in this case.